UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KELLY ANN FRENCH,                    )
                                     )
            Plaintiff,               )
                                     )
                                     )
v.                                   )        No. 3:14-CV-138
                                     )        (REEVES/GUYTON)
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security, )
                                     )
            Defendant.               )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support, filed August 13, 2014.  [Docs. 16 & 17].  Also before the Court is

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22].

Plaintiff Kelly Ann French seeks judicial review of the decision of the Administrative Law Judge

("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social

Security ("the Commissioner").

On November 12, 2009, Plaintiff protectively filed an application for disability insurance

benefits ("DIB"), claiming a period of disability which began November 18, 2008.  [Tr. 190-95,

211].   The Social Security Administration denied Plaintiff's application initially and upon

1

reconsideration. [Tr. 86-88, 90-91]. Plaintiff timely filed a request for a hearing, and she appeared before Administrative Law Judge, Robert Erwin on July 2, 2012 in Knoxville, Tennessee. [Tr. 112, 41]. The ALJ issued an unfavorable decision on September 10, 2012. [Tr. 20-40]. Plaintiff filed her request for review, which the Appeals Council declined on February 2, 2014. [Tr. 16-19, 1-6].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 3, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.   ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since November 18, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant should do no more than occasional climbing of ramps

2

or stairs; that the claimant should do no climbing of ropes, ladders, and/or scaffolds; that the claimant can do no more than occasional stooping, balancing, crouching, crawling, and/or kneeling; that the claimant can stand and/or walk up to 2 hours in an 8-hour workday; that the claimant can sit up to 6 hours in an 8-hour workday; that the claimant should do no more than occasional pushing/pulling with both lower extremities; that the claimant has average range of intellectual functioning; that there is no evidence of short term memory impairment; that the claimant has no limits in her ability to sustain concentration; that the claimant has no limits in long term or remote memory functioning; and that the claimant has a mild limitation[] in adaption to change and mild limitations in social interaction.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 24, 1968 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2008, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 25-32].

3

## II.      DISABILITY ELIGIBILITY

This case involves an application for DIB.  An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled.  42 U.S.C. § 423(a)(1).  "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.   If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.   If claimant's impairment does not prevent him from doing his

4

past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)

5

(quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47.  Thus, an ALJ's procedural error is harmless if his ultimate decision was

6

supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

On November 12, 2009, Plaintiff protectively filed an application for disability insurance benefits with an alleged onset date of November 18, 2008. [Tr. 190-95; 211]. She was 41 years old at the time she filed her application. [Tr. 211]. She went to college for three years and completed EMT and firefighter training. [Tr. 222-23]. She has past relevant work experience in both of these fields. [Tr. 225]. Plaintiff alleged that she ceased working due to her conditions of spinal injury, degenerative disc disease, and osteoarthritis. [Tr. 216].

On November 19, 2008, Plaintiff injured her back at work while lifting a quadriplegic and sought treatment at Fort Sanders Emergency Room. [Tr. 410]. She returned on November 23, 2008 for continuing back pain. [Tr. 418]. An x-ray revealed degenerative changes of the lower lumbar spine. [Tr. 425]. A MRI of the lumbar spine taken on January 5, 2009 showed degenerative spondylosis of the mid and lower lumbar spine. [Tr. 438]. The test revealed "bulging discs at the lower three lumbar disc levels . . . There is foraminal stenosis noted on the left at L4-5 and bilaterally at L5-S1. This is most advanced on the left at L5-S1." [Id.].

Plaintiff was referred to Dr. David H. Hauge of Neurosurgery & Spine Consultants of

East Tennessee. [Tr. 514]. Her first appointment was on February 23, 2009 and revealed hypesthesia to pinprick on the left at L5-S1, moderately reduced extension and flexion, and positive straight leg raising at 90 degrees on the left and right with "associated positive crossed straight leg raising[.]" [Tr. 517]. Dr. Hauge assessed that Plaintiff had "left, L5-S1 radicular syndrome without significant motor deficit. She has significant degenerative changes which I think are pre-existing at the L4-5 and L5-S1 levels with a superimposed, left, L5-S1 disk protrusion." [Tr. 518]. He continued her on Ultram and Skelaxin and prescribed a back brace and a "progressive course of physical therapy." [Id.].

Plaintiff began physical therapy on February 26, 2009 and continued through April 10, 2009. [Tr. 441-54]. During her last session Plaintiff reported "continued pain and inability to find a position or activity that alleviates her pain." [Tr. 454]. The Plaintiff returned to Dr. Hauge on April 10, 2009 with complaints of "constant, severe axial lumbar pain." [Tr. 511]. Dr. Hauge assessed Plaintiff with hypesthesia to pinprick from L5-S1 on the left, positive bilateral straight leg raising at 90 degrees, antalgic gait favoring the left, and normal station and posture. [Tr. 512]. Dr. Hauge prescribed a series of steroid injections and gave Plaintiff a "note to return to work as a Home Health care worker, with restrictions. The job location must be within a 20 mile driving radius, with a 10 lb. lifting limit, and minimal bending. She has been [instructed] to continue with the brace when up on her feet for more than 10 minutes." [Id.]. Dr. Hauge scheduled a follow up appointment and noted that "[i]f she obtains no symptomatic relief, consideration of lumbar surgery will be discussed." [Tr. 513]. On May 4, 2009, Plaintiff's symptoms were unchanged, except that her gait was normal, and Dr. Hauge advised Plaintiff that

8

"she has the option of living with her discomfort . . . [or] "she has the option of proceeding with an anterior lumbar interbody fusion at L4-5 and L5-S1." [Tr. 507-09].

On July 15, 2009, Plaintiff underwent an anterior retroperitoneal exposure of the L4-5 and L5-S1 disk spaces. [Tr. 456]. A post-operative MRI showed "changes at 4-5 and 5-1." [Tr. 483]. Her vertebral body heights were normal but there was "evidence of epidural fibrosis at 4-5 and 5-1." [Id.].

Dr. James P. Gregory submitted a physical residual functional capacity assessment on January 28, 2010. [Tr. 528-36]. He found that Plaintiff's complaints of pain and limited function were credible but that her "severe impairment" would likely improve within twelve months. [Tr. 535]. He assessed that Plaintiff could occasionally lift up to 50 pounds, frequently lift 25 pounds, and stand, sit, or walk for 6 hours out of an 8-hour workday. [Tr. 529].

On March 9, 2010, Plaintiff returned to Dr. Hauge with "complaints of persistent, and unimproved lumbosacral pain[.]" [Tr. 537]. Dr. Hauge noted Plaintiff was also experiencing depressive symptoms and mood swings. [Tr. 538]. Dr. Hauge recommended steroid injections and scheduled Plaintiff for a follow up exam. [Tr. 539]. In July of 2010, Dr. Hauge advised Plaintiff that she had the "option of living safely with her discomfort without surgery[,]" and he noted that her gait was intact but that she had hypesthesia to pinprick from L5-S1 on the left and right and was positive for straight leg raising on the right at 90 degrees. [Tr. 610]. Dr. Hauge recommended a Functional Capacity Evaluation. [Id.].

The Functional Capacity Evaluation was conducted on September 21, 2010 and was inconclusive of restrictions based on unreliable results. [Tr. 585]. Mr. Rob Pearse, certified

9

functional evaluator, performed the exam and found that Plaintiff "gave an unreliable effort."

[Id.].  Dr. Hauge explained these results to Plaintiff during their next exam on October 22, 2010.

[Tr. 582].  Dr. Hauge assessed that:

> [B]ased upon the biomedical standards for a previous two-level
> anterior lumbar interbody fusion, that [Plaintiff] is able to work at
> the sedentary job level.  This basically would allow five pound
> occasional lifting limit, with the ability to change positions [when
> necessary] and minimal bending from the waist.  She is placed
> today at Maximum Medical Improvement.

[Id.].  During the exam, Plaintiff had hypesthesia to pinprick from L5-S1 on the left, positive for

straight leg raising on the right at 60 degrees, and her gait was intact.  [Tr. 581-82].  Plaintiff was

referred to Pain Management for long-term pain care.  [Tr. 582].

Arthur Stair, M.A. and LPE, conducted an examination of Plaintiff on May 6, 2010.  [Tr.

559].  Plaintiff reported increased depressive symptoms due to her persistent pain and diminished

functionality.  [Tr. 559-61].  Mr. Stair assessed Plaintiff with an adjustment disorder and found

that she was mildly impaired in her ability to maintain persistence and concentration, adapt to

changes, and maintain social relationships.  [Tr. 562].

Plaintiff sought psychiatric treatment from Dr. Michael Fisher for depression and anxiety

in 2010 and 2011.   [Tr. 656-58].  On December 15, 2010, Dr. Fisher wrote a letter stating that

"[a]s a result of her depression, she is not currently emotionally stable enough to be able to work

at any job . . . In addition, she has an erratic sleep pattern which would preclude being able to

work on a regular schedule." [Tr. 804].[1]

---

[1] This letter was not made available to the ALJ prior to his decision.  The Appeals Council reviewed this

Dr. Wesley Giles conducted an examination of Plaintiff on March 19, 2011. [Tr. 622]. An examination of her "dorsolumbar spine reveals tenderness along the lower lumbar area with limitation of flexion of 10 degrees, extension of 10 degrees, and right and left lateral flexion of 10 degrees." [Tr. 623]. Plaintiff had "limitation of the bilateral hips, flexion 90 degrees active and passive." [Id.]. Dr. Giles summarized that Plaintiff was limited by her impairments, explaining that:

> She has obvious discomfort with all activities and has decreased range of motion and pain. I believe she can stand and walk for one hour out of eight hours a day. She can sit unrestricted. She should limit her lifting, pushing, and pulling to 5-10 lbs. She has no restriction with reaching, fingering, or handling. She cannot climb ladders, be on unprotected heights, or operat[e] heavy machinery while on mind-altering medications. She cannot stoop, kneel, or crawl.

[Tr. 624].

Dr. Frank Kupstas submitted a psychiatric assessment on April 1, 2011. [Tr. 627]. He diagnosed Plaintiff with major depressive disorder. [Tr. 630]. He found Plaintiff was mildly limited in her activities of daily living and moderately limited in social functioning and maintaining concentration, persistence, and pace. [Tr. 637]. Dr. Glenda Lowe-Carter submitted a physical residual functional capacity assessment on May 24, 2011. [Tr. 645-55]. She found that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, and could sit for 6 hours and stand or walk for 2 hours during an 8 hour work day. [Tr. 646].

Dr. Philip K. Axtell conducted a psychiatric evaluation of Plaintiff on January 17, 2012.

---

letter and determined that it did not provide grounds for reversing the ALJ's decision. [Tr. 1-2].

[Tr. 797]. Plaintiff reported daily activities of preparing simple meals, laundry, and driving when necessary. [Tr. 799]. She stated that she enjoyed shopping and tanning but had difficulty conducting these activities. [Id.]. Dr. Axtell diagnosed Plaintiff with mild adjustment disorder with anxiety and depression and a Global Assessment of Functioning score of 60. [Tr. 800]. He noted that "[h]er current psychiatric state was happy." [Id.].

A CT scan performed on November 13, 2013 revealed "[m]oderate to severe left neural foraminal narrowing at L4-L5. Severe [l]eft neural foraminal narrowing at L5-S1." [Tr. 806]. The scan further showed "[d]egenerative change of the posterior facet joints." [Tr. 807].

### B. Other Evidence

Vocational expert, Michael T. Galloway, conducted a vocational assessment of Plaintiff on August 26, 2011. [Tr. 351-57]. Mr. Galloway determined that Plaintiff had a "100% vocational disability. There are no jobs at less than a full range of sedentary physical demands in the labor market . . . She has chronic pain and requires the use of morphine on a daily basis which produces drowsiness." [Tr. 356]. Mr. Galloway further considered her depressive symptoms and Dr. Fisher's letter, finding these symptoms also impacted her ability to "perform any substantial gainful employment." [Id.].

The ALJ issued an unfavorable decision on September 10, 2012. [Tr. 20-40]. In finding that Plaintiff had the RFC to perform light work with exertional and nonexertional limitations, the ALJ assigned Dr. Axtell great weight and found that Plaintiff's depression was not a severe impairment. [Tr. 29]. The ALJ assigned Dr. Giles some weight, finding his limitation that Plaintiff could only stand or walk for one hour at a time too restrictive due to her normal gait.

12

[Tr. 30]. Dr. Hauge's assessment that Plaintiff could perform "sedentary work with occasional lifting [of] five pounds" was given little weight because "claimant's performance on the functional capacity evaluation was not reliable. In addition, Dr. Hauge noted that the claimant was making good progress. His notes also indicate that the claimant's gate was intact." [Id.]. Mr. Galloway's vocational assessment was also given little weight because he only saw Plaintiff one time and his assessment was partially based on Dr. Hauge's opinion. [Id.].

## V. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence. Specifically, Plaintiff contends that the ALJ did not properly weigh the opinion of Plaintiff's treating physicians, Dr. Fisher and Dr. Hauge. Further, Plaintiff claims that the ALJ erred in his consideration of the non-medical sources. Finally, the Plaintiff contends that these errors were not harmless and warrant remand.

The Commissioner responds that the ALJ properly considered the medical evidence in assessing Plaintiff's RFC. The Commissioner answers that the ALJ appropriately discounted Dr. Hauge's opinion and provided good reasons for assigning him little weight. The Commissioner further argues that the ALJ did not err in failing to acknowledge Dr. Fisher's opinion because it was not submitted to the ALJ. The Appeals Council viewed this material and decided it did not provide a basis for changing the ALJ's opinion, and therefore, the Commissioner argues that the ALJ cannot be faulted for evidence he did not see. The Commissioner further argues that the ALJ properly considered the non-treating and non-medical sources and appropriately evaluated Plaintiff's credibility.

13

## V.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A.  The Treating Physician Rule

Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine a claimant's RFC.  20 C.F.R. § 404.1527(b).  If the opinion of a treating physician is supported by the record, it is entitled to controlling weight.  See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").  Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision.  20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

14

weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

Therefore, even if the ALJ fails to properly apply the treating physician rule, if substantial evidence exists to support the ALJ's RFC determination and the ALJ provides sufficient explanation for this basis of the assessment, such an error will be found harmless. See Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804-05 (6th Cir. 2011) (holding that the regulations require only "good reasons" for the weight assigned a treating physician, "not an exhaustive factor-by-factor analysis," and finding that the ALJ's failure to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2) was harmless error because "the ALJ cited the opinion's inconsistency with the objective medical evidence, [Plaintiff's] conservative treatment and daily

15

activities, and the assessments of [Plaintiff's] other physicians. Procedurally, the regulations require no more."); Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

### 1. Dr. Hauge

The Court finds that the ALJ did not properly consider Dr. Hauge's opinion. Dr. Hauge treated Plaintiff from December 2008 through October 2010. [See 483-521; 580-621]. He examined her pre and post-surgery and served as her primary treating physician for her spinal injury. The transcript contains over eighty pages of treatment and examination records, and her final examination contains Dr. Hauge's functional restriction assessment based on almost two years of consistent treatment. [Tr. 761; see 582]. Yet the ALJ dismissed Dr. Hauge's opinion for three reasons. [See Tr. 30]. The ALJ explained that Dr. Hauge was entitled to little weight because "claimant's performance on the functional capacity evaluation was not reliable. In addition, Dr. Hauge noted that the claimant was making good progress. His notes also indicate that the claimant's gate was intact." [Id.]. The Court finds that none of these reasons, individually or in combination, constitute substantial evidence for granting Dr. Hauge's opinion little weight. See Francis, 414 F. App'x at, 804-05. The Court will address the ALJ's three reasons in turn.

First, the functional capacity evaluation results are immaterial to the weight due Dr.

Hauge's opinion. Dr. Hauge specifically acknowledged that the test results were inconclusive based on Plaintiff's unreliable performance and explained these results to the Plaintiff. [See 582]. After acknowledging these results, Dr. Hauge's examination notes from October 22, 2010 provide his own assessment of Plaintiff's functional limitations, explicitly stating that Dr. Hauge's opinion was based on "the biomedical standards for a previous two-level anterior lumbar interbody fusion." [Id.]. There is nothing in the record to indicate that Dr. Hauge based his opinion on the functional capacity evaluation or in any way disregarded Plaintiff's unreliable performance in determining her functionality. Without such evidence, the Court is unaware of the vocational assessment's relevance to Dr. Hauge's opinion. The Court readily acknowledges that such unreliable results are due proper consideration in determining Plaintiff's credibility, but they are immaterial to the veracity of Dr. Hauge's medical opinion, especially when he explicitly stated the basis for his assessment. Therefore, the Court finds that reliance on the functional capacity assessment in relation to Dr. Hauge's opinion is immaterial and improper.

In regards to the ALJ's second reason, namely Dr. Hauge's note that Plaintiff was "making good progress" [Tr. 30; see Tr. 726-28], the Court concurs that this is proper evidence in determining the weight assigned to Dr. Hauge. The treatment records from May 25, 2010 show that Plaintiff's condition was improved. [Tr. 726]. However, in determining the weight due a treating physician, the ALJ should not pick and choose the bits of evidence that contradict the opinion, but should consider the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); see also Howard v.

17

Barnhart, 376 F.3d 551, 554 (6th Cir. 2004) (finding error "where the administrative law judge was found to have selectively considered the evidence in denying benefits"). The majority of Dr. Hauge's treatment records are consistent with his functional assessment of October 22, 2010, reflecting consistent complaints of chronic pain and physical examination results. Further, regardless of her improved condition in May, Dr. Hauge continued her on prescription pain medication and chose to continue monitoring her condition in lieu of performing a functional capacity evaluation at that time. [Tr. 727-28]. Based on consideration of the evidence as a whole, the Court finds that the ALJ's notation on May 25, 2010 that Plaintiff was "making good progress" is insufficient to disregard Dr. Hauge's opinion. [See Tr. 30, 728].

Finally, the ALJ found Dr. Hauge's opinion overly restrictive because his treatment records reflect that Plaintiff's gait was intact. [See Tr. 30]. However, Plaintiff's gait was typically found to be intact, both pre and post-surgery, throughout Plaintiff's treatment relationship with Dr. Hauge. [See Tr. 509; 493; 487; 582; 610; 614; 620]. During most of these examinations, Plaintiff presented with the same symptoms and was found to consistently have hypesthesia to pinprick, positive strait leg raising, and chronic lumbar pain. [See Tr. 487 (chronic back pain and hypesthesia), 491-93, 507-09, 580-82, 609-10, 618-20]. The Court is unconvinced that Plaintiff's normal gait is indicative of her functional ability, especially considering that her station and posture remained largely the same pre and post-surgery and seem largely unaffected by her impairment.

Not only did the ALJ fail to provide "good reasons" for assigning Dr. Hauge little weight, he also neglected the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

18

The ALJ's opinion is absent consideration of the length of treatment, frequency of examination, the nature and extent of the treatment relationship, or the specialization of the source. See id. The ALJ only vaguely addressed the supportability and consistency, see id., of Dr. Hauge's opinion, juxtaposing his functional assessment with his own treatment notes from a single examination on May 25, 2010. [See Tr. 30] (relying on Dr. Hauge's note from May 2010 that Plaintiff "was making good progress."). The ALJ failed to address Dr. Hauge's numerous examination reports which documented Plaintiff's chronic pain and lack of improvement. [See Tr. 487, 491-93, 507-09, 580-82, 609-10, 618-20]. The Court finds such blanket and brief consideration inadequate to satisfy 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). The ALJ seemed to cherry pick the pieces of evidence that discredited Dr. Hauge's opinion and ignored the wealth of evidence, namely Dr. Hauge's own treatment records and diagnostic results, that supported his functionality assessment.

The ALJ treated Dr. Hauge's opinion in the same manner as non-treating and non-medical sources, without acknowledging the treating physician rule or explaining why Dr. Hauge's was not subject to controlling weight. This was in error. The purpose of the treating physician rule is to give careful consideration to physicians with extensive, firsthand knowledge of the claimant and impairment in question. A treating physician opinion offers insight that a single examination cannot, and therefore it is due adequate consideration. See Walker, 980 F.2d at 1070 ("The reason for such a rule is clear. The treating physician has had a greater opportunity to examine and observe the patient. Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other

19

physicians.").

The Court notes that strict compliance to the treating physician rule is not required under agency regulations.  See Francis, 414 F. App'x at 804-05; Friend, 375 F. App'x at 551.  However, an ALJ must "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR 96–2p, 1996 WL 374188, at *5.  Here, the ALJ stated that Dr. Hauge was granted little weight, but he failed to provide good reasons for this weight or an explanation as to why the treating physician rule did not apply.  Further, the medical evidence, opinions of non-treating physicians, and diagnostic tests support Dr. Hauge's opinion.  [See Tr. 483] (MRI results showing "changes at 4-5 and 5-1" and "evidence of epidural fibrosis"); [Tr. 624] (Dr. Giles finding similar restrictions as Dr. Hauge); [Tr. 806-07] (CT scan showing moderate to severe foraminal narrowing at L4-L5 and severe narrowing at L5-S1).

The Court finds that this error was not harmless.  At step five of the disability analysis, the ALJ found that there were still jobs in the national economy that Plaintiff could perform even if she was limited to sedentary work.  [See Tr. 32].  The Court notes that Dr. Hauge limited Plaintiff to sedentary work with some additional limitations.  [Tr. 582].  The Court acknowledges that the Plaintiff's outcome may be no different upon proper application of the treating physician rule.  Typically, such a scenario may make remand inappropriate.  See Tobey v. Comm'r of Soc. Sec., No. 11-15069, 2013 WL 1010727, at *11 (E.D. Mich. Feb. 22, 2013) (internal citations omitted) (affirming the ALJ's decision regardless of error because "there is no evidence that such further analysis would change the case's outcome, and plaintiffs claim of error should be denied).

20

However, the treating physician rule is a "mandatory procedural protection[,]" and thus embodies a substantial right. Wilson, 378 F.3d at 546-47 (a procedural lapse will be held harmless "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."). Regardless of whether proper consideration of Dr. Hauge's opinion would impact Plaintiff's outcome, denying her proper procedural protections negates a finding of substantial evidence. As the Sixth Circuit explained:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "A procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." Mazaleski v. Treusdell, 562 F.2d 701, 719 n. 41; see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs, 102 F.3d 1385, 1390 (5th Cir. 1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory.

Id. at 546.

Therefore, the Court finds that the ALJ's failure to properly consider Dr. Hauge's opinion was harmful error and warrants remand.

### 2. Dr. Fisher

The Plaintiff claims that the ALJ erred in not granting Dr. Fisher controlling weight or explaining the weight assigned. [Doc. 17 at 14-17]. However, Dr. Fisher's letter was not provided to the ALJ prior to his decision and therefore the record did not contain a treating physician opinion from Dr. Fisher. Therefore, the ALJ was under no obligation to apply the

21

treating physician rule to Dr. Fisher.  See  Terrell v. Comm'r of Soc. Sec., 12-CV-11781, 2013 WL 5178541, at *12 (E.D. Mich. Sept. 10, 2013) (explaining that where a plaintiff cannot cite to any treating physician opinion in the record that is contrary to the ALJ's decision "the undersigned cannot conclude that the ALJ erred in evaluating the record regarding these physicians.")

Dr. Fisher's letter of December 15, 2010, [Tr. 804], is considered new evidence as it was not made available to the ALJ prior to his decision.  The Appeals Council reviews new evidence pursuant to 20 C.F.R. § 404.970, which holds in relevant part:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §  404.970.

"On appeal this court still reviews the ALJ's decision rather than the Appeals Council's denial of review." Hammond v. Apfel, 211 F.3d 1269, at *3 (6th Cir. 2000).  New evidence submitted to the Appeals Council will become part of the administrative record, and if "'the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence."  Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993) (quoting Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992).

22

Therefore, the Court will consider Dr. Fisher's letter as part of the administrative record, with specific inquiry into whether it is new and material evidence. See 20 C.F.R. § 404.970. Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" Foster, 279 F.3d at 357 (quoting Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988)).

The Court finds that the letter is neither new nor material. The ALJ penned his administrative decision on September 10, 2012 and Dr. Fisher's letter was written on December 15, 2010. The Court is unclear as to why this letter was not made available to the ALJ and has not been provided any evidence as to why the letter was not submitted when it was clearly in existence prior to the ALJ's decision.

The Court also finds that Dr. Fisher's letter is not material. The ALJ thoroughly considered the Plaintiff's mental impairments and found that her depression and anxiety was not "not as severe as she has alleged." [Tr. 29]. He specifically considered Dr. Fisher, Dr. Axtell, and Mr. Stair's examination records, Plaintiff's daily activities, and self-reported improvement. [Id.]. In discussing Dr. Fisher's treatment records from April 28, 2011, the ALJ noted that Plaintiff was "more relaxed, better able to handle stress, and not getting overwhelmed with anxiety." [Tr. 29; see Tr. 657]. On July 21, 2011, Plaintiff reported she was doing "'ok' but [had] been ill." [Tr. 656]. Dr. Fisher noted that she was having trouble with her marriage, was

23

not getting enough sleep, and that her mood was up and down. [Id.]. However, Dr. Fisher stated that Plaintiff tended to isolate herself when she was upset as opposed to "getting angry." [Id.]. He advised that Plaintiff should continue on her prescriptions and that he "believ[ed] she has reached [Maximum Medical Improvement]". [Id.]. The Court notes that both of these treatment reports were subsequent to Dr. Fisher's letter of December 15, 2010. Dr. Fisher explicitly stated that Plaintiff had reached her Maximum Medical Improvement seven months after the December 15, 2010 letter. [Tr. 656]. During that examination, although Plaintiff still struggled with depression, she showed marked improvement and stated she felt "ok." [Tr. 656]. Nothing in the treatment records subsequent to December 15, 2010 reflect that Plaintiff was so emotionally unstable that she could not work. [See Tr. 804]. Further, Dr. Fisher's letter explicitly clarifies that his opinion was given "early in her treatment and therefore it would not be possible to determine whether she is at maximum medical improvement (MMI)." [Tr. 804]. Dr. Fisher determined Plaintiff was at MMI on July 21, 2011, and at that time her condition was improved. [See 656-57]. The ALJ considered these treatment records in making his determination and the Court believes that his decision would likely be the same regardless of Dr. Fisher's December 15, 2010 letter. Therefore, the Court finds that Dr. Fisher's December 15, 2010 letter is immaterial.

Plaintiff's argument that the ALJ erred in his consideration of Dr. Fisher's opinion is without merit. However, because this case is to remanded for proper consideration of Dr. Hauge's opinion, Dr. Fisher's letter is now part of the administrative record and should be considered when determining Plaintiff's RFC.

24

**B. Non-Medical Sources**

Plaintiff argues that the ALJ erred in his consideration of Mr. Galloway's vocational assessment. "Opinions from 'non-medical sources' who have seen the individual in their professional capacity should be evaluated by using the applicable factors" such as length of treatment, frequency of examination, the nature and extent of the treatment relationship, the specialization of the source, and the opinions consistency with the record. SSR 06-03P, 2006 WL 2329939, at *3, 5 (S.S.A. Aug. 9, 2006); see also 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). The ALJ granted Mr. Galloway little weight partly because his opinion was based on Dr. Hauge's opinion. [Tr. 30]. Because the ALJ erred in his consideration of Dr. Hauge, Mr. Galloway's vocational assessment should also be reconsidered. Once the ALJ has given proper consideration to Dr. Hauge's treating physician opinion, he should then consider whether the weight assigned to Dr. Hauge impacts the weight due Mr. Galloway's vocational assessment, applying the agency procedures set forth above.

**C. Credibility**

The Commissioner interprets Plaintiff's "harmless error" statement, [Doc. 17 at 21], as an argument that the ALJ improperly weighed her credibility. [Doc. 22 at 13]. The Court finds that the ALJ's credibility determination is based on substantial evidence.

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii)

25

precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (1996); 20 C.F.R. § 1529(c)(3).  Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Court finds that the ALJ adequately considered these factors and that his determination that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible" is supported by substantial evidence.  [Tr. 28].  The ALJ considered Plaintiff's daily activities, medical records, and unreliable performance on the vocational assessment.  [Tr. 28-29].  Based on this evidence, the ALJ made a proper credibility determination.  Any argument to the contrary is without merit.

26

## VI.  CONCLUSION

Based upon the foregoing, it is **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment [**Doc. 16**] be **GRANTED in part** and the Commissioner's Motion for Summary Judgment [**Doc. 21**] be **DENIED in part**.

Accordingly, the Court **RECOMMENDS** that this case be remanded and:

- The ALJ shall reconsider Dr. Hauge's opinion by applying the treating physician rule. Should Dr. Hauge's opinion not be due controlling weight, the ALJ shall provide sufficient explanation as to the weight assigned so that his reasoning will be clear to a subsequent reviewer;

- The ALJ shall consider Dr. Fisher's letter as a treating physician opinion hereby incorporated into the administrative record.  Should Dr. Fisher's opinion not be due controlling weight, the ALJ shall provide sufficient explanation so that his reasoning will be clear to a subsequent reviewer;

- Upon reconsideration of the Dr. Hauge's opinion, the ALJ shall review Mr. Galloway's vocational assessment, determining specifically whether the weight assigned Dr. Hauge in any way impacts or changes the weight due Mr. Galloway's vocational assessment.

Respectfully submitted,

United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).